UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:                                          Case No. GL 14-00712-jtg

BOOKER T. GAULDEN,                              Chapter 7

                        Debtor.                 Hon. John T. Gregg
_____/

## MEMORANDUM DECISION REGARDING MOTION TO
## DISMISS CASE PURSUANT TO 11 U.S.C. § 707(a)

This matter comes before the court in connection with a motion of the Michigan Public School Employees' Retirement System (the "Retirement System") to dismiss the Chapter 7 bankruptcy case of Booker T. Gaulden (the "Debtor") pursuant to section 707(a) of the Bankruptcy Code [Dkt. No. 20] (the "Motion"). For the reasons set forth below, the court shall grant the Motion.

## JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## BACKGROUND[1]

### A.   The Overpayment Dispute

Prior to the Petition Date (as defined below) and after retiring in 2011, the Debtor began receiving retirement pension and healthcare benefits from the Retirement System. (Debtor's Ex. 4.) During a prepetition audit of the Debtor's account, the Retirement System discovered that the Debtor had not been eligible for retiree health insurance premiums for the months of August 2011 through December 2012 in the aggregate amount of $14,077.02. (Debtor's Ex. 2.) At some point in January 2013, the Retirement System apparently informed the Debtor of this alleged "overpayment."[2] (Debtor's Ex. 4.)

---

[1]     To say that the factual record in this matter is fairly disjointed would be an understatement. For reasons that are further discussed below, the record is based solely on (i) the docket, (ii) the documents submitted by the Debtor and the Retirement System in support of their respective briefs and subsequently admitted into evidence by this court, including a transcript from the meeting of creditors and (iii) the transcripts of hearings at which both parties appeared and participated.

[2]     Later correspondence seems to indicate that the Retirement System first advised the Debtor of the overpayment and adjustments to the Debtor's benefits by letter dated December 28, 2012. (*See* Debtor's Ex. 3.) Neither party sought to introduce any such letter into evidence.

The Debtor disputed that any overpayment had occurred, and instead contended that he was eligible for the health insurance premiums as previously paid by the Retirement System. (Debtor's Ex. 3-6.)  From March 2013 through September 2013, the Debtor sent a series of letters to the Retirement System requesting that the Retirement System (i) restore the Debtor's insurance subsidy, which apparently had either been suspended or terminated as of December 28, 2012, and (ii) schedule an administrative hearing to adjudicate the dispute.[3]  (Debtor's Ex. 3-7.)

The letters are somewhat inconsistent from a temporal perspective.  For example, the Debtor sent a two sentence letter dated June 18, 2013 to an unidentified party stating only the following:  "Enclosed is my petition for hearing for restoration of health insurance subsidy.  I await your reply."  (Debtor's Ex. 6.)  The letter encloses a "petition," which is also dated June 18, 2013. The petition cites to various "letters" (plural) presumably sent by the Retirement System.  All such letters from the Retirement System are, according to the petition, dated August 12, 2013.  However, again, the letter enclosing the petition and the petition itself are both dated June 18, 2013, thereby making the chronology of events as set forth in the Debtor's petition factually impossible.[4]

The court's concern is compounded by the fact that on August 12, 2013, the Retirement System actually did send the Debtor an unsigned notice which (i) informed the Debtor of the alleged deficiency or, as the Retirement System refers to it, the overpayment, (ii) terminated any payment of future health insurance premiums, and (iii) sought to recoup the overpayment under Mich. Comp. Laws § 38.1345.  (Debtor's Ex. 2.)  The notice enclosed a "Repayment Options Form" also dated August 12, 2013.

On November 11, 2013, the Retirement System sent the Debtor a letter advising him that his medical coverage was being terminated as of December 1, 2013 because of his "report of other insurance coverage on the annual Verification of Coverage campaign."[5]  (Debtor's Ex. 8.) According to the Retirement System, the Retirement System's policy prohibits Medicare eligible enrollees from being enrolled in other medical coverage while being enrolled in the Retirement System's medical plan.

An administrative hearing to consider the overpayment and the Debtor's eligibility for continuing benefits was allegedly scheduled to occur sometime after February 10, 2014.  (Motion at p. 6; Evid. Hrg. Tr. at p. 21.)  However, the actual date scheduled for the hearing is unclear to the court based on the record.  Regardless, it is clear that the administrative hearing never occurred.

B.      *Bankruptcy Petition, Schedules and Related Documents*

---

[3]      The copies of the letters that were admitted into evidence are all unsigned copies.

[4]      The court first wondered whether the dates of the letter and the petition were typographical errors.  As such, the court surmised that the letter and the petition should have been dated June 18, 2012 or June 18, 2014.  However, the letter and the petition could not have been dated June 18, 2012 because, according to the Debtor, the Retirement System did not notify the Debtor of the overpayment until January 2013. (Debtor's Ex. 4.)  Similarly, the letter and the petition could not have been dated June 18, 2014, because the Debtor had already filed his Chapter 7 bankruptcy by that date.  Finally, the Response (as defined below) filed by the Debtor indicates that the letter and petition were dated June 18, 2013.  (Resp. at p. 7.)

[5]      The copy of this letter that was admitted into evidence is unsigned.

On February 10, 2014 (the "Petition Date") and before the administrative hearing, the Debtor filed a voluntary petition for relief [Dkt. No. 1] under Chapter 7 of the Bankruptcy Code.[6] Scott Chernich was duly appointed as the Chapter 7 trustee (the "Trustee") for the Debtor's estate [Dkt. No. 4]. Concurrently with the filing of his bankruptcy petition, the Debtor filed his Schedules, Statement of Financial Affairs, and other related documents [Dkt. No. 1].[7] Approximately one month after the Petition Date, the Debtor filed amendments to Schedule B and the Statement of Financial Affairs, as well as an amended Statistical Summary of Certain Liabilities [Dkt. Nos. 14-15]. Both the initial and amended documents were signed under the penalty of perjury.

According to Schedule B (as amended), the Debtor owned very little property as of the Petition Date. Specifically, the Debtor only owned wearing apparel, a watch, a ring and a lawn mower. All other personal property (*e.g.*, a 2009 Toyota Prius, a 2009 Subaru, a bed, furniture, books, pictures, appliances, and a television) was owned by the Debtor's non-filing spouse. Similarly, the Debtor's non-filing spouse owned the Debtor's residence in Lansing, Michigan free and clear of any mortgage or other encumbrance. (341 Tr. at p. 10.) Nothing in the record indicates that the Debtor ever had an interest in such property, and a review of the schedules filed by the Debtor in connection with his 2005 bankruptcy corroborates this disclosure.[8]

The Debtor's Schedules in this case reveal that the Debtor had very few creditors as of the Petition Date. Schedule F reveals that as of the Petition Date, the Debtor was allegedly liable for the following general unsecured debts:

| Creditor | Amount Owed |
|---|---|
| Aspire | $0.00 |
| Blue Cross-Blue Shield | $15,000.00 |
| Capital 1 Bank | $0.00 |
| Chase | $0.00 |
| Continental Services Group, Inc. | $2,000.00 |
| Credit One Bank | $31.00 |
| DSNB Macys | $81.00 |
| Foster Swift Collins & Smith, PC[9] | $8,000.00 |

---

[6]    The Retirement System alleges that the Debtor filed his bankruptcy petition on the eve of the administrative hearing or somewhere thereabouts. While this may be true, nothing in the record supports this allegation.

[7]    On June 11, 2014, the court advised the Debtor in writing that he had failed to file with the court a certificate of completion of instructional course in personal financial management within sixty (60) days after the date first set for the meeting of creditors [Dkt. No. 25]. The court further advised the Debtor that this deficiency may result in the Debtor's case being closed without entry of a discharge and without further notice or order. As of November 10, 2014, the Debtor had yet to file any such certificate with the court.

[8]    On March 11, 2005, the Debtor filed a voluntary petition for relief under Chapter 7 with this court. *See In re Gaulden*, Case No. 05-03204. The Debtor received his discharge on July 13, 2005.

[9]    Although the Trustee is an attorney with the law firm of Foster Swift Collins & Smith, PC, no party has raised such affiliation as a conflict. The court was initially concerned that a conflict may exist. However, based on statements

| | |
|---|---|
| GECRB/MERVYNS | $0.00 |
| HFC/Beneficial Mtg. Services | $0.00 |
| Michigan Public School Employees Retirement | $15,000.00 |
| Office of Retirement Services | $15,000.00 |
| State of Michigan – Dept. of Management & In Care of Office of Retirement Services | $15,000.00 |
| Target Credit Card (TC) | $0.00 |
| White Schneider Young Chiodini, P.C. | $7,500. 00 |
| WM Finance | Unknown |

According to Schedule I, the Debtor receives monthly income of $1,285.00 as a result of Social Security and pension/retirement benefits.  The Debtor's non-filing spouse, however, receives $2,364.84 in monthly income derived from her employment as a school teacher.[10]  On his Schedule J, the Debtor disclosed monthly expenses of $5,029.00, and monthly net income of -$1,379.16 based on the combined monthly income of the Debtor and his non-filing spouse from Schedule I of $3,649.84, less the Debtor's monthly expenses.  The Debtor also included a continuation sheet for Schedule J on which he disclosed Medicare expenses, prescription costs, and his Blue Cross/Blue Shield premium.

*C.*      *Meeting of Creditors*

On February 11, 2014, the court issued a notice which scheduled the meeting of creditors under section 341 of the Bankruptcy Code for March 25, 2014 [Dkt. No. 4].  Thereafter, the meeting was rescheduled for April 16, 2014, and then rescheduled again for May 8, 2014.[11]  [Dkt. Nos. 18-19].  At the meeting of creditors, the Trustee administered an oath to the Debtor, whereby the Debtor agreed to provide sworn testimony.  (341 Tr. at p. 3.)  The Trustee first questioned the Debtor regarding the Schedules, Statement of Financial Affairs and other related documents:

> Trustee:      Did you have a chance to look at the petition and schedules before you signed them?
>
> Debtor:                Yes.
>
> Trustee:      Were they true, accurate, and complete to the best of your knowledge, information and belief?

---

made by the parties in response to the court's questions at oral argument, it does not appear as if Foster Swift Collins & Smith, PC holds a claim against the Debtor's estate.

[10]      The Debtor's non-filing spouse was scheduled to retire in June 2014.  It is unknown whether this occurred, but it is also largely irrelevant.

[11]      It is unclear from the transcript on which date the meeting was actually first commenced and then finally concluded.  A text on the docket from the Trustee dated July 7, 2014 (the "Report of No Distribution") notes that the meeting of creditors was concluded on April 16, 2014.

Debtor:              That is correct.

Trustee:             Then you signed them in a number of spots, right?

Debtor:              Yes.

Trustee:             Okay.  So we're going to talk to you about that.

Debtor:              Four or five places.

* * * * *

Trustee:             Sir, I just need you to recognize that you signed the document in a number of different places, okay?  That's a declaration concerning schedules.  Is that your signature?

Debtor:              That is correct.

(341 Tr. at pp. 3-5.)

The Trustee then identified the presence of counsel for the Retirement System, who was permitted to conduct a brief examination of the Debtor.  (341 Tr. at pp. 5-14.)  After some limited questioning, the Trustee became concerned with the Debtor's disclosure of his income and expenses and decided to adjourn the meeting.  (341 Tr. at p. 15.)

At the adjourned meeting of creditors, the Trustee resumed questioning of the Debtor.  The Trustee noted that prior to adjournment, the Debtor's expenses were at issue and, in particular, the Debtor's payment of $2,000 per month to his "thirty-four or thirty-five year old" daughter for her education.  (341 Tr. at p. 8; Adj. 341 Tr. at pp. 16-17.)  The Debtor had previously testified that he did not give his daughter any money; rather, his wife was solely responsible for such gifts.  After the Trustee inquired whether the Debtor had amended his Schedules to correct this inaccuracy, counsel for the Debtor interjected to explain that Schedule J reflected household, as opposed to individual, expenses. (Adj. 341 Tr. at p. 17.)  The Trustee thereafter proceeded to comprehensively review the income and assets of the Debtor and his non-filing spouse, noting with some disbelief the careful degree of separation between the two.  (Adj. 341 Tr. at pp. 20-43.)

The Trustee next expressed concern over the expenses that the Debtor listed on Schedule J. The Trustee stated, "[i]f you would maintain separate books and records, and you don't combine an income, then I want to see exactly how much of the money that is spent on a monthly basis [comes] out of [the Debtor's] money."[12]  (Adj. 341 Tr. at p. 23.)  Thereafter, the Debtor again testified that Schedule J, as filed, was technically inaccurate because it included expenses paid by his non-filing spouse. (Adj. 341 Tr. at pp. 27-35.)  In some instances, the Debtor testified, expenses are split between the Debtor and his non-filing spouse evenly.  (Adj. 341 Tr. at pp. 27-29.) However, in other instances, such as the utility bills, the Debtor testified that he pays one third of

---

[12]      The transcript thereafter reflects a turn for the worse, with some commotion ensuing as a result of the Trustee's allegedly aggressive and "surly" questioning.  (Adj. 341 Tr. at pp. 23-27.)

the expenses.  (Adj. 341 Tr. at p. 27.)  Finally, yet other expenses are apparently paid entirely by the Debtor's non-filing spouse, notwithstanding the fact that they are expenses of the household as a whole.[13]  (Adj. 341 Tr. at pp. 27-28, 34-35.)

With respect to medical costs, health insurance, prescriptions and pension benefits, it became clear from the Debtor's testimony that certain line items in Schedule J were duplicative and required clarification. (Adj. 341 Tr. at pp. 37-42.)  The Trustee reiterated that in his view (and as reflected by the Debtor's testimony), the Schedules were incorrect and needed to be amended or, at the very least, clarified. (Adj. 341 Tr. at pp. 43-44.)  The Trustee reminded the Debtor that the Schedules are the Debtor's responsibility and cautioned:

> [A]s it stands now, *there's a creditor in the room*; and I obviously can't figure it out, unless I'm going to put pen to paper myself, and I still don't know the answer - - which expenses that are listed in Schedule J are his and what his income is and how that relates to the expenditures he makes every month. . .
>
> You might, say, check these off (ph.), *as the creditors are entitled to those answers*; and so I think I know what it is now.  I'm not sure about that.  *So I'll leave it in your discretion to make a determination as to whether or not you think it's a good idea to amend the schedule or make a supplemental schedule or supplemental disclosure, whatever it is that you think is appropriate*.

(Adj. 341 Tr. at pp. 46-47.) (emphasis added).

On July 7, 2014, the Trustee entered the Report of No Distribution which states no assets are available for distribution to creditors from the Debtor's estate.

D.      *The Motion to Dismiss*

On May 23, 2014, the Retirement System filed its Motion.  The Motion requests that the Debtor's case be dismissed for "cause" pursuant to section 707(a).  Specifically, the Retirement System contends that the number of creditors listed on Schedule F is fictitious, as the only creditors of the Debtor are the Retirement System and two credit card companies which are owed $112.00.  Moreover, the Retirement System alleges that the Debtor misrepresented his monthly expenses.  According to the Retirement System, after the Debtor's testimony at the meeting of creditors, the Debtor's expenses total $894.95 per month, and not the $5,029.00 per month as reflected in Schedule J.  Finally, the Retirement System notes that the Debtor's income as reported on Schedule I is seemingly inaccurate, as it should be disclosed as $1,320.74, and not $1,285.00.

In a response brief filed on June 30, 2014 [Dkt. No. 30] (the "Response"), the Debtor contends in relevant part that his Schedules reflect innocent mistakes. As such, the Debtor admits in the Response that Schedule J should be amended to reflect expenses solely attributable to the Debtor as opposed to the household.  The Debtor further concedes that Schedule J should be

---

[13]     The Debtor and his non-filing spouse maintain separate checking accounts.  (Adj. 341 Tr. at p. 22.)

reduced by $495 because it is duplicative. However, the Debtor maintains that Schedule F accurately identifies the Debtor's general unsecured creditors, including those that may or may not have claims, in an abundance of caution.

The Retirement System filed a short reply brief on August 14, 2014 [Dkt. No. 38] (the "Reply"). The Reply highlights, among other things, that the Debtor still has not filed amended Schedules to account for his testimony regarding his income and expenses during the meeting of creditors. The Reply reiterates the need for candid disclosures from the Debtor, as there can be no question regarding their inaccuracy after the meeting of creditors and the statements in the Response filed by the Debtor.

This court scheduled a hearing on the Motion for July 29, 2014, which was subsequently adjourned until August 19, 2014. At the hearing on August 19, 2014, the court listened to preliminary arguments from both the Debtor and the Retirement System. The Retirement System expressed a great deal of concern with, among other things, the failure of the Debtor to amend his Schedules, which the Retirement System emphasized had been brought to the attention of the Debtor at the initial and adjourned meeting of creditors, during communications between counsel to the Debtor and the Retirement System, and through the Motion and Reply. The Debtor, in turn, argued that the facts did not support the Retirement System's allegations of a lack of good faith under section 707(a), although the Debtor admitted that certain, but not all, information in the Schedules highlighted by the Retirement System was incorrect due to inadvertence. The Debtor explained that his income and expenses in his Schedules were computed based on a software program and thus the incorrect figures should be excused.

The court ultimately elected not to render a decision on the pleadings, and instead stated, in pertinent part, as follows:

> Also, it appears to me that the movant is proceeding under 707(a) and that leads me to believe that we do, in fact, need an evidentiary hearing, given the totality of the circumstances and the various tests we need to go through and what the debtor's motives are. If either of you feel as though an evidentiary hearing is inappropriate or unnecessary, please let me know, I welcome comment. But I am a little concerned that I don't have all of the facts in front of me, especially where the debtor's motives are called into question. I know there has been some testimony given in the past in the form of a 341 meeting, but I would like to see a live witness before me and evaluate the witness in that respect.
>
> What I'd like to do is have my clerk give both of you a call and set a date for the evidentiary hearing. I would ask that any briefing be submitted seven days in advance. I would also ask that the parties exchange witness lists and exhibits at least seven days in advance. I would appreciate [it] if you'd stipulate to the extent possible to the admissibility of the exhibits. If you're not able to stipulate, then we'll deal with it at the hearing, although I don't really [believe] admissibility is going to be at issue in this case.

> I encourage you to talk settlement, this is a small amount of money in the grand scheme of things, but to both parties clearly an important amount of money. You've spent a lot of time briefing this issue already, and I hate to ask you to do more and my preference would have been to decide the matter today. I'm just not prepared to do it without some live testimony. For that reason, what we'll do is I'll have, again, my clerk call both of you and we'll set a date at some point in the near future. Are there any scheduling issues I should be aware of on either of your parts right now?

The parties had no further comment and the hearing was concluded.

The court ultimately scheduled an evidentiary hearing for October 23, 2014 in Lansing, Michigan. Prior to the hearing, both parties filed supplemental briefs in support of their respective positions [Dkt. Nos. 44, 47].[14] In its supplemental brief, the Retirement System asserted that it does not hold a "claim" as defined by section 101(5). Rather, the Retirement System posited that it merely had a right of recoupment, which does not constitute a "claim."[15] Therefore, according to the Retirement System, the "claims" of the Debtor's creditors are confined to credit card debt in the aggregate amount of $112.00.[16] The Debtor also filed a supplemental brief in which he focused on the application of consumer debts in relation to section 707(b).

Upon the commencement of the hearing on the morning of October 23, 2014, counsel for the Debtor advised the court for the first time that the Debtor would be unable to testify because he was hospitalized the night before the hearing and was recovering at home. Faced with the prospect of a hearing without any witnesses, the court inquired how the parties wished to proceed.[17] Both parties advised the court that they preferred not to return at a later date to participate in an evidentiary hearing. Instead, the parties requested that the court render a decision based on the pleadings, the exhibits attached thereto, and oral argument. The court then proceeded to review each exhibit attached to the pleadings and entertain objections, if any, to the admission into evidence of the exhibits. Finally, the court again requested that the parties affirmatively waive

---

[14]   At the prior hearing, the parties had both raised the issue of whether the debt was a consumer debt, notwithstanding the fact that the Motion sought relief only under section 707(a). The court requested that the parties brief this issue, as the court was not convinced of its relevancy in the context of a motion for relief under section 707(a).

[15]   The court is left to wonder whether the Retirement System has standing to seek dismissal if it does not hold a claim. In all likelihood, the right of recoupment constitutes a pecuniary interest that satisfies the requirements of constitutional and prudential standing. *See Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 852-53 (6th Cir. 2002). However, the court need not consider this issue in the context of section 707(a) and will thus refrain from doing so, especially in light of the fact that the Retirement System filed a proof of claim that was not subject to objection at the time of the hearing. (Proof of Claim No. 1.)

[16]   The Retirement System also suggested in its Reply that the Debtor fails the means test pursuant to section 707(b). However, because the Motion only seeks relief under section 707(a), the court will not consider this argument.

[17]   The court asked the Retirement System if it had any witnesses. It had none, other than the expectation that the Debtor would testify. The Retirement System did not, however, subpoena the Debtor. (Evid. Hrg. Tr. at p. 6.)

their right to an evidentiary hearing, which both parties did on the record.[18]  (Evid. Hrg. Tr. at pp. 32, 46, 54.)

## **DISCUSSION**

In the instant case, the Retirement System requested dismissal as a result of the Debtor's alleged lack of good faith, including the delay and prejudice caused by the Debtor's failure to amend his Schedules.

Section 707(a) provides that:

> The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including –
>
> (1)     unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2)     nonpayment of any fees or charges required under chapter 123 of title 28; and
>
> (3)     failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

11 U.S.C. § 707(a).

The party seeking to have a case dismissed bears the burden of proof by a preponderance of the evidence.  *See Simon v. Amir (In re Amir)*, 436 B.R. 1, 16 (B.A.P. 6th Cir. 2010); *contra In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000) (once a party "calls into question" debtor's good faith, burden shifts to debtor to prove good faith).  The determination of whether "cause" exists under section 707(a) is left to the sound discretion of the bankruptcy court.  *In re Rahim*, 442 B.R. 578, 581 (Bankr. E.D. Mich. 2010) (citing *Indus. Ins. Servs. v. Zick (In re Zick)*, 931 F.2d 1124, 1126 (6th Cir. 1991)).

### A.     *Unreasonable Delay Prejudicial to Creditors*

Pursuant to the express terms of the Bankruptcy Code, a Chapter 7 case may be dismissed for an unreasonable delay by the debtor that is prejudicial to his or her creditors.  11 U.S.C. § 707(a)(1).  The Bankruptcy Code does not identify the precise type of conduct or behavior that would constitute "unreasonable delay" thereby causing "prejudice" to creditors.[19]  Courts have identified the most obvious type of delay to be a debtor's failure to timely file requisite documents pursuant to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and any applicable

---

[18]     An evidentiary hearing is technically unnecessary in order to render a decision under section 707(a).  *See Indus. Servs. v. Zick (In re Zick)*, 931 F.2d 1124, 1128-29 (6th Cir. 1991).

[19]     The Sixth Circuit Court of Appeals has not had occasion to address this issue in a published decision.

local rules.  *See*, *e.g.*, *In re Green*, 119 B.R. 72, 73 (Bankr. D. Md. 1990).  Courts have also held that a debtor's failure to amend his or her schedules and other disclosures constitute cause for dismissal.  *In re Jakovljevic-Ostojic*, 517 B.R. 119, 130 (Bankr. N.D. Ill. 2014); *In re Luu*, 2009 WL 1519104, at *5 (Bankr. S.D. Tex. May 28, 2009).

As the United States Supreme Court has stated, bankruptcy is meant for the "honest but unfortunate debtor."  *Grogan v. Garner*, 498 U.S. 279, 287 (1991).  In order to earn a discharge in bankruptcy, a debtor must comply with certain deadlines and make honest and prompt disclosures as required by the Bankruptcy Code and applicable rules.  *See also Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (debtor has affirmative duty to disclose assets).  As a general principle, the bankruptcy process as a whole revolves around the debtor's veracity and complete disclosures.  *Gold v. Guttman (In re Guttman)*, 237 B.R. 643, 649 (Bankr. E.D. Mich. 1999) (citations omitted).  "Accordingly, the disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting those obligations is part of the price debtors pay for receiving the bankruptcy discharge."  *In re Colvin*, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003).

Section 521(1) of the Bankruptcy Code requires a debtor to file "a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs. . ."  A debtor has a duty to truthfully provide information required by the schedules and related documents in careful, complete and accurate means, and they are submitted to the court and parties in interest under the penalty of perjury.  *See In re Colvin*, 288 B.R. at 480 (collecting cases).  Thus, the burden is on the debtor to use reasonable diligence in completing his or her schedules and other disclosures.  *In re Sharp*, 244 B.R. 889, 892 (Bankr. E.D. Mich. 2000).  A debtor must answer all questions contained in the schedules and other disclosure documents accurately so that creditors have a complete understanding of a debtor's financial condition.  *Lewis v. Summers (In re Summers)*, 320 B.R. 630, 642 (Bankr. E.D. Mich. 2005); *see In re Rice*, 452 B.R. 623, 626 (Bankr. E.D. Mich. 2011), *aff'd*, 478 B.R. 275 (E.D. Mich. 2012).

A debtor's obligations regarding the accuracy and completeness of his or her schedules continue throughout the bankruptcy case and any errors must be promptly corrected.  *Rugiero v. Nationstar Mortgage, LLC*, - - - Fed. Appx. - - -, 2014 WL 4549003 at *2 (6th Cir. Sept. 15, 2014) (citation omitted); *In re Jackovljevic-Ostojic*, 517 B.R. at 127 (citation omitted).  "'[A]dopting a cavalier attitude toward the accuracy of the schedules and expecting the court and creditors to ferret out the truth is not acceptable conduct by the debtors or their counsel.'"  *Id*. (quoting *AT&T Universal Card Servs. Corp. v. Duplante (In re Duplante)*, 215 B.R. 444, 447 n.8 (9th Cir. B.A.P. 1997)).

As noted above, several courts have held that cause exists to dismiss a Chapter 7 case when a debtor neglects to adhere to his or her disclosure obligations, including supplementation and/or correction of schedules, statement of financial affairs, and related documents.  For example, in a decision by the Bankruptcy Court for the Eastern District of Texas, a creditor moved to dismiss the debtor's case for lack of good faith under section 707(a).  *In re Solomon*, 277 B.R. 706 (Bankr. E.D. Tex. 2002).  In finding cause for dismissal, the court relied on the fact that the debtor had failed to amend his schedules in order to correct inconsistencies, omissions and errors that had been previously brought to the debtor's attention, including errors on Schedule J and on Schedule F related to debts that had already been paid.  *Id*. at 711.  The court noted that it routinely

encounters debtors who innocently err in preparation of the schedules prepared in haste but who later diligently amend their disclosures to correct any deficiencies.  However, the *Solomon* court found the particular set of circumstances before it distinguishable, as the debtor knew or at least should have known of the inaccuracies in his schedules yet took no action despite the ongoing dispute with the creditor.  *Id.* at 711-12.  In dismissing the case, the Solomon court summarized its view as follows:

> Regardless of Debtor's good or bad faith in connection with the preparation of these totally inaccurate schedules, this Court believes that Creditors are entitled to have accurate bankruptcy schedules and full disclosure of Debtor's actual financial condition.  Whether an accurate disclosure would have made any difference in the conduct of this bankruptcy case is not before this Court at this time.  What is clear is that Debtor filed schedules of debts that he had manipulated to reflect something other than his true financial condition, and whatever his motive, that is not proper.

*Id.* at 712.

In a similar decision from the Bankruptcy Court for the Southern District of Texas, the court considered whether to dismiss a case for unreasonable delay that was prejudicial to creditors. *In re Luu*, 2009 WL 1519104 (Bankr. S.D. Tex. May 28, 2009).  *Luu* involved a situation similar to the facts in the instant case, as the initial meeting of creditors was adjourned by the Chapter 7 trustee due to, among other things, discrepancies in the schedules and statement of financial affairs. *Id.* at \*1.  The debtor failed to file any amendments prior to the date of the adjourned meeting of creditors, so the meeting was adjourned yet again.  *Id.*  The trustee advised the debtor and the debtor's counsel that they would need to amend the schedules and statement of financial affairs so they would be accurate and include all available information.  *Id.* at \*2.  When no steps were taken to correct the schedules and statement of financial affairs, the trustee filed a motion to dismiss based on inaccuracies related to income and identification of creditors.  *Id.* at \*2.

After an evidentiary hearing, the court concluded that the debtor and his counsel unreasonably delayed the bankruptcy process by failing to cooperate with the trustee, failing to file accurate and complete schedules and statement of financial affairs, and failing to amend the disclosures to correct the deficiencies until confronted with a motion to dismiss.  Such conduct, according to the court, was prejudicial in that it denied creditors with an opportunity to understand the true state of the debtor's finances.  As such, the court dismissed the case and disgorged fees from the debtor's attorney.

Finally, a recent decision from the Bankruptcy Court for the Northern District of Illinois is also instructive.  *In re Jakovljevic-Ostojic*, 517 B.R. at 119.  In *Jakovljevic-Ostojic*, after denying the creditor's motion to dismiss under section 707(b), the court entered a *sua sponte* order to show cause as to why the debtor's Chapter 7 case should not be dismissed for unreasonable delay under section 707(a).  *Id.* at 122.  After an evidentiary hearing on issues raised in the order to show cause, the court dismissed the debtor's case.  *Id.*  The court found that the debtor had demonstrated a disregard for her disclosure obligations, which were addressed only after the court raised the issue. *Id.* at 129.  The court commented, "[t]hat she ignored this glaring inaccuracy, only fixing it once

it was caught by the court, is a sign of indifference at best, deceit at worst." *Id*.  Based on, among other things, the misrepresentation of expenses in her initial Schedule J, the court found dismissal for lack of good faith appropriate.  *Id*. at 132.

In addition, the court found that an unreasonable delay that was prejudicial to creditors had occurred, because the debtor made material amendments to her schedules six months after they were filed, but only after the court or the creditor caused the debtor to respond to the creditor's motion to dismiss.  *Id*. at 130.  According to the court, the length of this delay in light of comments made by the debtor at her meeting of creditors rendered such conduct unreasonable.  *Id*.  Finally, the court noted that the debtor's conduct was prejudicial because, among other things, the creditor was denied access to information that the debtor had an affirmative duty to provide, regardless of a pending proceeding.  *Id*. at 131.

In the instant case, the court concludes that the Retirement System has sufficiently demonstrated by a preponderance of the evidence that the Debtor's conduct caused an unreasonable delay that is prejudicial to creditors, namely the Retirement System.  Based on the transcript from the meeting of creditors and the Debtor's pleadings, it is uncontroverted that the Schedules filed by the Debtor contain material inaccuracies.[20]

First, as the Debtor conceded to some extent at oral argument and during the meeting of creditors, the creditors identified on Schedule F are incorrect.  For example, the Debtor testified that creditors holding $60,000 of claims in the aggregate should be revised to identify only the Retirement System, which holds a claim (or, according to the Retirement System, a right of recoupment) in the amount of $14,077.02.  The court does not find such duplication of creditors as fatal as the Retirement System would like it to be, however.  At the meeting of creditors, the Debtor testified, with supplementation from his counsel, that the four related entities were listed for notice purposes.  While a better practice would have been to list three of those claims as $0.00 and "for notice purposes only," the court can appreciate a desire to disclose all potential creditors in an abundance of caution to ensure proper notice.  The court therefore concludes that the Debtor's approach in this regard alone does not support a finding of an unreasonable delay.

Second, the Debtor admitted that Schedule J contains material inaccuracies.  During the meeting of creditors, the Debtor testified that he believed that it was necessary to include household expenses on Schedule J, and therefore included the expenses of his non-filing spouse. The Debtor then attempted to identify the portion of expenses listed on Schedule J that he actually incurs.  The Debtor's explanation in this regard is somewhat abnormal, as he proclaimed ownership of nominal assets and responsibility for a disproportionate share of expenses, among other things.  Although the court has little more than a transcript to evaluate the Debtor's credibility, the court questions it to some extent based on the letters attached as exhibits to the Response because, as noted above, the chronology of events as set forth in those letters is factually impossible.  Nonetheless, the court will not discount the Debtor's testimony for purposes of evaluating unreasonable delay.  As such,

---

[20]     In the instant case and due to the parties' decisions to forego an evidentiary hearing, the transcript of the meeting of creditors provides the court with its only opportunity to evaluate the Debtor.  The transcript is not particularly flattering to any of the parties involved.  It is marred by interruptions, inaudible statements, and an overall combative tone.

the fact that material inaccuracies were included in Schedule J *at the time of filing* does not lead this court to conclude an unreasonable delay has occurred.

However, as recognized by the courts in *Solomon*, *Luu* and *Jakovljevic-Ostojic*, the Debtor's failure to amend his Schedules to correct material inaccuracies constitutes grounds for dismissal of his case.  Like the court in *Jakovljevic-Ostojic*, this court finds compelling the fact that the Debtor has failed to amend his Schedules for a significant period of time.  The court in *Jakovljevic-Ostojic* was troubled by the fact that amendments were not made for six months after the petition date, and only upon discovery of the inaccuracies by the creditor and/or the court.  In this case, the Debtor was first apprised of the material inaccuracies in his Schedules when he appeared for the initial meeting of creditors, which was more than six months ago.  The Debtor continued to be confronted with these issues during the adjourned meeting of creditors.  As in *Luu*, the Trustee not only informed the Debtor that the disclosures were insufficient, but also that the Debtor should be especially concerned with his disclosures due to the interest of the Retirement System in the Debtor's financial condition.

Shortly after the meeting of creditors, the Debtor was yet again reminded that his Schedules were incorrect when the Retirement System filed the Motion.  The Motion specifically alleges that in his Schedules the Debtor misrepresented the number and amount of claims against him, as well as his income and expenses.  Rather, the Response filed by the Debtor on June 30, 2014 actually admits several of the inaccuracies highlighted in the Motion and characterizes them as correctable mistakes.

Inexplicably, the Debtor, despite being warned by the Trustee and admitting the inaccuracies, never amended his Schedules.  The Debtor was clearly aware of his duty to amend, as he had done so previously in this case.  This court therefore concludes that the Debtor caused an unreasonable delay by failing to amend his Schedules and other disclosures for more than six months after learning of the aforementioned material deficiencies.

The court also finds that the debtor's unreasonable delay has resulted in prejudice to creditors.  The Retirement System appeared at both the initial and adjourned meeting of creditors for the purpose of better understanding the Debtor's financial condition.  Upon reviewing the transcript of the meeting of creditors, the transcripts from the two hearings related to the Motion, and the pleadings filed by the Retirement System, it is clear that the Retirement System was concerned with the Debtor's income and expenses for purposes of formulating a motion to dismiss under section 707(b).  While the Retirement System has yet to file such a motion, its actions and comments at the hearings make it clear that it was seeking such information for that purpose.

Equally as important, the Retirement System was entitled to truthful and accurate Schedules and other disclosures in connection with the Motion presently before the court.  In *Zick*, the authority upon which the Retirement System primarily relies in support of its Motion, the Sixth Circuit considered the income and expenses of the debtor in order to determine the debtor's lack of good faith.  *Zick*, 931 F.2d at 1128.  While the amounts of income and expenses of the debtor in *Zick* and the Debtor in the instant case are vastly different, the Retirement System was nonetheless entitled to such information from the Debtor as part of the Debtor's Schedules.  This court concludes that because the Debtor did not amend his Schedules, the Retirement System was

prejudiced by the Debtor's inexcusable failure to correct admittedly material inaccuracies, thereby depriving the Retirement System of complete disclosures.

The court reiterates that a debtor has a fundamental obligation to file schedules and other disclosures that are truthful and accurate. Upon any determination that the information contained therein is materially inaccurate, a debtor must amend the disclosures accordingly. This court, like the court in *Solomon*, holds that the motive of a debtor should rarely be considered when determining unreasonable delay where the Debtor is aware, and has admitted, that material inaccuracies appear in his or her schedules and other disclosures. Creditors, other parties in interest, and the court are entitled to review complete and accurate disclosures in order to evaluate a debtor's actual financial condition.

B.      *Lack of Good Faith*

The Retirement System has also asserted in its Motion that cause exists to dismiss the Debtor's case based on a lack of good faith. Although "lack of good faith" is not expressly stated in section 707(a), the enumerated grounds for dismissal for "cause" under section 707(a) are not exhaustive. *Zick*, 931 F.2d at 1126-27. Rather, these enumerations are merely illustrative, as the term "including" contemplates grounds for cause other than those listed. *Id.*

In *Zick* the Sixth Circuit Court of Appeals held that a Chapter 7 bankruptcy case may be dismissed due to the debtor's lack of good faith. The Sixth Circuit cautioned that dismissal should "be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence." *Id.* at 1129; *see In re Rahim*, 442 B.R. 578, 581 (Bankr. E.D. Mich. 2010).

The Retirement System relies on *Zick* in support of its argument that the Debtor did not file his bankruptcy case in good faith. However, it would be difficult for this court to determine whether the Debtor did in fact lack good faith due to the limited factual record developed by the parties in this case. As noted above, the record in this case can be characterized as challenging. While an argument can be made that certain elements considered by the Sixth Circuit in *Zick* are present in this case, the court need not reach a determination in light of its conclusion regarding the Debtor's unreasonable delay. The court therefore declines to address this issue further.

## **CONCLUSION**

As a word of caution, this Memorandum Decision should not be construed as an invitation to file a motion to dismiss for an unreasonable delay under section 707(a) solely because a debtor's schedules are inaccurate as an initial matter. As recognized by the court in *Solomon*, schedules and other requisite disclosures are often prepared on an expedited, and in some cases, an emergency basis. This court understands that schedules and other disclosures may need to be amended from time to time to correct inaccuracies. Nonetheless, the court impresses upon debtors and their counsel the need to undertake prompt amendment, especially where inaccuracies are material.

For the foregoing reasons, the Motion is granted. The court will prepare an order consistent with this Memorandum Decision.

**Signed: November 10, 2014**





John T. Gregg
United States Bankruptcy Judge